IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00243-PAB-KAS

PATRICK HIGGINS,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipal corporation,

    Defendant.

___

**ORDER**
___

This matter comes before the Court on Defendant City and County of Denver's Motion for Summary Judgment [Docket No. 40] pursuant to Federal Rule of Civil Procedure 56. Plaintiff Patrick Higgins filed a response. Docket No. 45. Defendant City and County of Denver ("Denver") filed a reply. Docket No. 50. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Mr. Higgins asserts a federal claim for religious discrimination based on a failure to accommodate, a federal claim for religious discrimination based on retaliation, and a Colorado state claim for religious discrimination in employment. Docket No. 1 at 5-7.

I. **BACKGROUND**[1]

Patrick Higgins was an employee of the City and County of Denver from June 15, 2014 to October 26, 2021. Docket No. 40 at 2, ¶¶ 1-2. On March 12, 2020, Denver Mayor Michael B. Hancock declared of State of Emergency in the City and County of

___

[1] The following facts are undisputed unless otherwise indicated.

Denver in response to the Covid-19 pandemic. *Id.*, ¶ 3. On August 2, 2021 and September 1, 2021, the Denver Department of Public Health and Environment issued Public Health Orders ("PHO") requiring all Denver employees to be fully vaccinated against Covid-19 by September 30, 2021. *Id.* at 2-3, ¶ 4. As a Denver employee, this requirement applied to Mr. Higgins. *Id.* at 3, ¶ 6.[2] Mr. Higgins received notice of the vaccine mandate on or around August 2, 2021, reviewed the order, and understood that it obligated him to become fully vaccinated by the deadline. *Id.*, ¶¶ 5, 7. However, he did not believe that Covid-19 was an actual pandemic. *Id.*, ¶ 8. Mr. Higgins did not trust the vaccine's safety or efficacy, *id.*, ¶ 11, and had no intention of receiving the Covid-19 vaccine in response to the PHO. *Id.*, ¶ 9.

The two PHOs stated that Denver would provide reasonable accommodations for employees with medical or religious objections to the Covid-19 vaccine. *Id.* at 4, ¶ 13.[3] Mr. Higgins was aware that Denver offered a religious exemption. *Id.*, ¶ 15.[4] Plaintiff recalls receiving emails and instructions from Denver regarding both the vaccine mandate and the requirements for religious and medical exemptions. *Id.*, ¶ 16. Applications for religious exemptions and accommodations were due on August 31, 2021 by 5:00 pm. *Id.*, ¶ 14.[5] In August and September 2021, before the vaccine

---

[2] Mr. Higgins disputes the lawfulness of the order. This is improper legal argument. Mr. Higgins, however, does not dispute the existence of the order. Docket No. 45 at 3, ¶ 6. The Court deems this fact admitted.

[3] Mr. Higgins disputes the reasonableness of the accommodation process, Docket No. 45 at 3, ¶ 13, but does not dispute what the August 2, 2021 PHO stated. The Court deems this fact admitted.

[4] Mr. Higgins partially disputes this fact on the basis that he did not know that he would not be able to ask questions or have his concerns addressed. Docket No. 45 at 3-4, ¶ 15. This is a nonresponsive argument. The Court deems this fact admitted.

[5] Mr. Higgins disputes the reasonableness of the deadline. Docket No. 45 at 3, ¶ 14. This is a nonresponsive argument. The Court deems this fact admitted.

mandate took effect on September 30, 2021, Denver sent eleven emails to Denver employees, including Mr. Higgins, regarding the vaccine requirements. *Id.*, ¶ 18. Denver ultimately received 297 religious accommodation requests, *id.* at 8, ¶ 40, and applied the same review process to every Denver agency. *Id.*, ¶ 39.[6] Of the 297 requests, Denver granted religious accommodations to 237 employees and denied requests from 42 employees. *Id.*, ¶ 40.[7]

At 4:09 p.m. on August 31, 2021, Mr. Higgins emailed Denver's Human Resources Department an unsigned "Request for Religious Exemption/Accommodation Related to Covid-19 Vaccine" form[8] along with an attached statement. *Id.* at 4, ¶ 19. At the top of the form, Mr. Higgins wrote, "Please review the subsequent document. This document is unsigned as I do not agree with any aspect of this form or its requirements." *Id.* at 5, ¶ 24. At the beginning of his statement, Mr. Higgins wrote that the statement was his "written response to the COVID 'vaccine' requirement mandated by Michael Hancock." *Id.*, ¶ 20. The statement also contained the following: "I am using the 'Request for Religious Exemption/Accommodation Related to COVID-19 Vaccine' form as merely a means to identify who I am and I do not consent to anything

---

[6] Mr. Higgins argues that the fact that Denver applied the same standard does not make Denver's actions lawful. Docket No. 45 at 5, ¶ 39. This is improper legal argument. The Court deems this fact admitted.

[7] Another 18 requests were either administratively closed or withdrawn. *Id.* at 8, ¶ 40.

[8] Denver required employees to complete this form in order to request a "Religious Exemption/Accommodation." Docket No. 40-5 at 2. Both plaintiff and defendant appear to accept this as undisputed. *See* Docket No. 40 at 4, ¶ 14 (referencing the form); Docket No. 45 at 3, ¶ 14 (taking issue with other parts of defendant's asserted undisputed fact but not addressing the reference to the form).

3

the form stands for, nor is this considered a submission as this is classified as government overreach." *Id.*, ¶ 25.[9]

Mr. Higgins's statement references religious matters twice. *Id.* at 6, ¶ 27. First, Mr. Higgins states that "the devil has servants everywhere and has been coordinating efforts to bring down the population to a 'sustainable' level." *Id.* Second, Mr. Higgins states that "revelations speaks of the mark of the beast," and that "graphene oxide [in graphene lipid nanotechnology] can connect artificial intelligence and human tissue, rewrite your DNA, and make it impossible to separate yourself from this mark." *Id.*

Mr. Higgins's statement contains a number of other concerns about the Covid-19 vaccine that are not religious in nature, including concerns about "gene therapy" disguised as vaccines; efforts by the "United Nations" to reduce the world population; medical concerns whether the vaccines caused myocarditis and pericarditis or even death; concerns that anyone who takes the Covid-19 vaccine is a "lab rat for the elite; for the mega-rich pharmaceutical executives"; overall political and moral objections regarding alleged forced genocide and loss of freedoms; and theories that drug companies and China are funding the City of Denver in its vaccine mandate endeavor. *Id.*, ¶ 28.

On September 1, 2021, Denver communicated to Mr. Higgins that "[y]our request for an exemption is denied as you stated that you were using the 'form merely as a means to identify who I am and I do not consent to anything the form stands for, nor is this considered a submission' and you did not sign the form." *Id.* at 5-6, ¶ 26. Mr.

---

[9] Mr. Higgins argues that he did submit a religious accommodation request, Docket No. 45 at 4, ¶ 25, which is nonresponsive to the fact offered here about what Mr. Higgins wrote on the form. The Court deems this fact admitted.

4

Higgins did not reach out to anyone about his concerns until after the deadline to submit a request for a religious exemption had passed. *Id.* at 7, ¶ 33.[10] On October 14, 2021, Denver sent Mr. Higgins a "contemplation of discipline" notice, stating that a contemplation of discipline meeting would be held on October 25, 2021. *Id.*, ¶ 34. Denver informed Mr. Higgins that termination was the presumptive discipline for not being vaccinated, but that he could sign an agreement to get the vaccine. *Id.*, ¶ 35.[11] After Mr. Higgins refused to sign the stipulation, Denver fired him on October 26, 2021. *Id.* at 7-8, ¶¶ 36-37.

Mr. Higgins appealed his dismissal to the Career Service Board, but later withdrew his appeal. *Id. at 8*, ¶ 38.[12] Mr. Higgins filed a complaint of discrimination with the Colorado Civil Rights Division ("CCRD") and received CCRD's determination on September 23, 2022. *Id.*, ¶ 42. Mr. Higgins filed his suit in this Court on January 27, 2023. Docket No. 1.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if,

---

[10] Mr. Higgins disputes the relevance of the exact timeline of when he reached out to Denver officials. Docket No. 45 at 5, ¶ 33. This is legal argument. The Court deems this fact admitted.

[11] Mr. Higgins argues that Denver unreasonably urged him to violate his religious beliefs. Docket No. 45 at 5, ¶ 35. This is a nonresponsive argument. The Court deems this fact admitted.

[12] Mr. Higgins argues that he withdrew from the appeal because he knew it would not lead to a favorable outcome. Docket No. 45 at 5, ¶ 38. This is a nonresponsive argument. The Court deems this fact admitted.

under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### III. ANALYSIS

Denver moves for summary judgment on Mr. Higgins's federal claim for religious discrimination based on a failure to accommodate, his federal claim for religious

discrimination based on retaliation, and his Colorado state claim for religious discrimination in employment.  Docket No. 40 at 20.  For the reasons that follow, the Court will grant Denver's motion as to each of the three claims.

### A. Title VII Failure-to-Accommodate Claim

"Title VII makes it 'unlawful . . . for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion.'"  *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018) (citing 42 U.S.C. § 2000e–2(a)(1)).  "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  *Id.* (quoting 42 U.S.C. § 2000e(j)).

The three elements of a religion-based failure-to-accommodate claim are 1) the employee has a bona fide religious belief that conflicts with a job requirement; 2) the employee informed the employer of this conflict ("notice"); and 3) the employer fired the employee for failing to comply with the job requirement.  *Id.* at 549.  The Court only needs to address the second element – notice to the employer of the conflict between the requirement and the employee's religion – in order to resolve this portion of the motion.

While there are no magic words that an employee must use, any request for accommodation must be "sufficiently direct and specific, giving notice that [the employee] needs a special accommodation."  *Foster v. Mountain Coal Co., LLC*, 830

7

F.3d 1178, 1188 (10th Cir. 2016) (addressing an accommodation request in the context of the Americans with Disabilities Act) (citations omitted).[13] Providing some form of adequate notice to an employer is especially important in the context of religious accommodations since a person's religion and an associated need for an accommodation may not be as apparent as with other protected characteristics. *See Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010).

Here, Mr. Higgins sent Denver a copy of the religion accommodation form that Denver provided to employees for vaccine exemption requests. Docket No. 40 at 4, ¶ 19. At the top of the form, Mr. Higgins wrote, "[p]lease review the subsequent document. This document is unsigned as I do not agree with any aspect of this form or the requirements." *Id.* at 5, ¶ 24. At the beginning of his attached statement, Mr. Higgins wrote that the statement was his "written response to the COVID 'vaccine' requirement mandated by Michael Hancock." *Id.*, ¶ 20. Mr. Higgins further stated, "I am using the 'Request for Religious Exemption/Accommodation Related to COVID-19 Vaccine' form as merely a means to identify who I am and I do not consent to anything the form stands for, nor is this considered a submission as this is classified as government overreach." *Id.*, ¶ 25. Thus, Mr. Higgins, in three different places, indicated to Denver that his use of the form was for a purpose other than for seeking a religious accommodation.

The Court finds that those statements render the form anything but a "direct and specific" request for an accommodation. *See Foster*, 830 F.3d at 1188. Although an

---

[13] "Due to the similarities between the ADA and Title VII, we generally interpret those statutes consistently." *E.E.O.C. v. C.R. England*, 644 F.3d 1028, 1038 n.11 (10th Cir. 2011) (citations omitted).

employer's obligation to engage in the interactive process is broad, the obligation is not so broad as to require an employer to ignore its employee's own words.  *See Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) (holding that the plaintiff had not made a sufficient accommodation request in a case where one of the plaintiff's alleged accommodation requests stated "I am not now requesting any special considerations.  I intend to continue to perform my assigned responsibilities to the best of my abilities.").

Nor is an employer expected to treat all employee grievances as requests for accommodation, especially where the employer has established clear protocols for accommodation requests and informed its employees of those protocols.  *See Ness-Holyoak v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 2257339, at *1 (D. Utah May 22, 2017) (holding that an employee's complaints to supervisors that she had more work than her co-workers could not reasonably be considered a request for accommodation, especially since the employee handbook described the accommodation-request process, and the plaintiff had previously used that process to request other accommodations); *see also Ballard*, 284 F.3d at 964 ("Other record evidence, however, strongly suggests that Ballard nonetheless did not want accommodation . . . . Furthermore, given his demonstrated ability to perform a cerebral IRS job, Ballard . . . knew how to make such a request.").  The undisputed facts show that Mr. Higgins recalls receiving emails and instructions from Denver regarding both the vaccine mandate and the requirements for requesting religious and medical exemptions, Docket No. 40 at 4, ¶ 16, yet he did not follow those protocols for requesting an accommodation and instead told Denver that his statement was not a "submission" of the form.  *Id.* at 5, ¶ 25.  In light of these facts, the Court finds that Mr. Higgins's statement to Denver did

9

not adequately notify Denver of a request for a religious accommodation. The Court will grant Denver's motion for summary judgment on this claim.

### B. Title VII Retaliation Claim

The three elements of a Title VII retaliation claim are (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1142 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)). The Court only needs to address the first element – protected opposition to discrimination – in order to resolve this portion of the motion.

"Protected activity for the purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII." *Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1146 (D. Kan. 2011), *aff'd*, 462 F. App'x 797 (10th Cir. 2012) (unpublished); *see also* 42 U.S.C. § 2000e-3(a). Protected activity can therefore range from filing formal EEOC charges to "voicing informal complaints to superiors" about discrimination, *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004), and can include requesting a reasonable accommodation. *Foster*, 830 F.3d at 1188. However, "an inadequate request for an accommodation – one that does not trigger an employer's duty to provide a reasonable accommodation or participate in the 'interactive process' of finding an appropriate accommodation – can never constitute protected activity." *Id.* (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999)). As discussed above, the Court finds that Mr. Higgins did not adequately notify Denver that he was seeking an

10

accommodation. Therefore, Mr. Higgins did not engage in a protected activity and cannot prevail on his retaliation claim. The Court will grant Denver's motion for summary judgment on Mr. Higgins's religion-based retaliation claim.

### C. Colorado Anti-Discrimination Act Claim

The third claim in Mr. Higgins's complaint alleges that Denver violated Colo. Rev. Stat. § 24-34-402 (known as the Colorado Anti-Discrimination Act, or "CADA") by discriminating against him on the basis of religion. Docket No. 11 at 7-8, ¶¶ 46-51. Denver argues that Mr. Higgins's CADA claim is time-barred. Docket No. 40 at 19-20. Mr. Higgins's response brief, Docket No. 45, does not address this issue.

Mr. Higgins filed a complaint of discrimination with the CCRD and received a determination from the CCRD on September 23, 2022. Docket No. 40 at 8, ¶ 42.[14] Under Colorado law, a party has ninety days after receiving a CCRD determination to file a civil action. *See* Colo. Rev. Stat. § 24-34-306(2)(b)(I)(B). Mr. Higgins filed his complaint with this Court on January 27, 2023, Docket No. 40 at 9, ¶ 43, a date which was more than ninety days after he received the CCRD determination. The fact that Mr. Higgins did not receive his right-to-sue notice from the Equal Employment Opportunity Commission until October 31, 2022, *see* Docket No. 11-1, does not save his CADA

---

[14] The record shows that, while CCRD signed its determination on Friday, September 23, 2022, CCRD did not transmit its determination to Mr. Higgins via email until Monday, September 26, 2022. *See* Docket No. 40-14 at 7, 12. It is not clear whether CCRD also mailed its determination, although Mr. Higgins admitted Denver's assertion that he received the CCRD determination on September 23. Docket No. 45 at 5, ¶¶ 40-43. The Colorado statute of limitations begins running upon the "mail[ing]" of CCRD's determination. *See* Colo. Rev. Stat. § 24-34-306(2)(b)(I)(B). Regardless of whether the statute of limitations began to run on September 23 or September 26, the ninety-day limit had passed by the time Mr. Higgins filed his complaint on January 27, 2023.

11

claim. *Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 812-815 (10th Cir. 2010) (holding that a CCRD determination does not impact the timeline for a federal claim and that an EEOC determination does not impact the timeline for a state claim). The Court will grant Denver's motion for summary judgment on the CADA claim.

IV. **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendant City and County of Denver's Motion for Summary Judgment [Docket No. 40] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are dismissed with prejudice. It is further

**ORDERED** that this case is closed.

DATED: January 30, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge